UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PLASTECH ENGINEERED PRODUCTS,
INC.,

       Plaintiff,

                                 Case No. 05-72046

v.

                                 Honorable Patrick J. Duggan

KS AUTOMOTIVE, INC.,

       Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on JUNE 13, 2005.

PRESENT:        THE HONORABLE PATRICK J. DUGGAN
                    U.S. DISTRICT COURT JUDGE

Plaintiff Plastech Engineered Products, Inc. ("Plastech") filed this lawsuit against

Defendant KS Automotive, Inc. ("KSA") on May 25, 2005, alleging breach of contract.

Presently before the Court is KSA's motion to dismiss for lack of personal jurisdiction,

filed June 3, 2005.

### Factual Background

KSA is a California corporation with its principal place of business in San

Leandro, California.  *See* Def.'s Mot. Ex. 1, ¶ 2..  KSA is a Tier II supplier of injection

1

molded plastic parts to the automotive industry. *See id.* ¶ 1. KSA contends that it is not licensed to do business in and is not doing business in the State of Michigan. *See id.* KSA further contends that it has no tooling, offices, employees, plants, warehouses, distribution centers, or any other equipment or facilities in Michigan. *See id.*

In 1999, KSA began selling automotive parts directly to Johnson Controls, Inc. ("JCI"), a Wisconsin corporation. *See id.* ¶ 3. The majority of KSA's parts sold to JCI are incorporated into vehicles assembled at New United Motor Manufacturing, Inc. ("NUMMI"). *See id.* ¶ 3. NUUMI's facility is located in Fremont, California, a short distance from KSA's San Leandro facility. KSA's parts were sold to JCI "F.O.B. San Leandro." *See id.* Parts sold by KSA to JCI did not leave California from the time they left KSA's facility and arrived at NUUMI's facility.

In the Winter of 2001, Plastech secured a relationship with JCI whereby Plastech would become the lead supplier of certain automotive parts to JCI. *See id.* ¶ 4. Under this lead supplier relationship, KSA continued to supply parts to JCI but Plastech acted as an intermediary between KSA and JCI. As a result of Plastech's and JCI's agreement, JCI instructed KSA to enter into a business relationship with Plastech in order to continue supplying parts to JCI. *See id.* ¶ 7.

In the Fall of 2002, KSA and Plastech reached an agreement on the terms and conditions that would govern their relationship with respect to the JCI parts program. *See id.* ¶ 5. Representatives of Plastech visited KSA's San Leandro facility to negotiate and execute the agreement. *See id.* ¶ 6. A written agreement was executed in California on November 21, 2002. *See id.* ¶ 5. Pursuant to this agreement, KSA has supplied parts to

JCI through Plastech. KSA also supplies parts to other Plastech customers, such as Toyota. *See* Def.'s Mot. Ex. 2 ¶ 9; Pl.'s Mot. for TRO at 1. KSA does not ship any of its parts to Michigan. As before, KSA's parts for JCI are shipped, as they were when KSA contracted directly with JCI, "F.O.B. San Leandro."

## Applicable Law

The plaintiff has the burden of establishing a court's jurisdiction over a defendant. *See Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)(citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S. Ct. 780, 785 (1936)). Where the defendant's motion to dismiss for lack of personal jurisdiction is supported by affidavits, the plaintiff "by affidavit or otherwise must set forth specific facts showing that the court has jurisdiction." *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974). If the defendant's motion is decided solely on the basis of these materials, the plaintiff need only make a *prima facie* showing of jurisdiction in order to defeat the defendant's motion.[1] *See id.* "Under these circumstances the burden of the plaintiff is relatively slight and the district court 'must consider the pleadings and affidavits in the light most favorable to the plaintiff.'" *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980)(quoting *Poston v. Am. President Lines, Ltd.*, 452 F. Supp. 568, 571 (S.D. Fla. 1978)). A *prima facie* showing requires the plaintiff to "'demonstrate facts which support a finding of jurisdiction . . .'" *Id.* at 438 (quoting *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d

---

[1]Alternatively, if the court concludes that the written materials raise issues of credibility or disputed issues of fact, a preliminary hearing may be held. *Am. Greetings Corp. v. Cohen*, 839 F.2d 1164, 1169 (6th Cir. 1988). In that case, the plaintiff must show by a preponderance of the evidence that jurisdiction exists. *Id.*

1280, 1285 (9th Cir. 1977)).

In a diversity case such as this, state law governs personal jurisdiction. *Theunissen*, 935 F.2d at 1459. KSA has not consented to this Court's jurisdiction; nor does it carry on a continuous and systematic part of its general business within Michigan. *See* MICH. COMP. LAWS ANN. § 600.711 (Michigan's general personal jurisdiction statute with respect to foreign corporations). Thus jurisdiction over KSA must be based on Michigan's long arm statute. MICH. COMP. LAWS ANN. § 600.715.

Section 600.715 confers "limited" or "specific" personal jurisdiction over a foreign corporation where the claim arises out of an act or acts creating any of the following five relationships:

> (1) The transaction of any business within the state.
>
> (2) The doing or causing any act to be done, or consequence to occur, in the state resulting in an action for tort.
>
> (3) The ownership, use, or possession of any real or tangible personal property situated within the state.
>
> (4) Contracting to insure any person, property, or risk located within this state at the time of contracting.
>
> (5) Entering into a contract for service to be performed or for materials to be furnished in the state by the defendant.

MICH. COMP. LAWS ANN. § 600.715. Although Michigan's long arm statute has been interpreted broadly, it is limited by constitutional concerns of due process under the Fourteenth Amendment. *Theunissen*, 935 F.2d at 1459.

Due Process requires the plaintiff to establish a defendant's minimum contacts with the forum sufficient to comport with "traditional notions of fair play and substantial

justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945). The Sixth Circuit requires satisfaction of the following three criteria to find that a nonresident defendant has sufficient contacts with the forum to support personal jurisdiction:

> First, the defendant must purposefully avail [itself] of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Co. v. Mohasco Indus.*, 401 F.2d 374, 381 (6th Cir. 1968).

To determine if a nonresident defendant purposefully availed itself of the privilege of acting in the forum or caused a consequence in the forum, the court must examine the content of the defendant's contact with the forum. "It is the 'quality' of [the] 'contacts,' and not their number or status, that determines whether they amount to purposeful availment." *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1265 (6th Cir. 1996)(quoting *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1119 (6th Cir. 1994) and *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1301 (6th Cir. 1989)). Jurisdiction is not proper where the defendant's contacts with the forum are "random," "fortuitous," or "attenuated," or a result of the "unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183 (1985)(citations omitted). "Jurisdiction is proper, however, where the contacts proximately resulted from actions by the defendant . . . that creates a 'substantial connection with the forum state." *Id*. at 475, 105 S. Ct. at 2183-84. In other words,

"[w]here a defendant 'deliberately' has engaged in significant activities within a State or has creating 'continuing obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there." *Id*. at 476, 105 S. Ct. at 2184.

As to the second criteria– that the cause of action must arise from the defendant's activities within the forum state – "[a]n action will be deemed not to have arisen from the defendant's contacts with the forum state only when they are unrelated to the operative facts of the controversy." *Creech v. Roberts*, 908 F.2d 75, 80 (6th Cir. 1990).  Finally, as to the third criteria, "[w]hen the purposeful availment and arising under factors of the *Southern Machine* test are satisfied, only the unusual case will not satisfy the third factor of a 'substantial enough connection with the forum to make the exercise of jurisdiction reasonable." *Id*.

## Analysis

At a hearing held on June 8, 2005, Plastech's counsel contended that the Court has "long-arm" personal jurisdiction over KSA because KSA transacted business within the state and entered into a contract for service to be performed or for materials to be furnished in the state.  *See* MICH. COMP. LAWS ANN. §§ 600.715(1) and (5).  Alternatively, Plastech's counsel asserted that this Court has personal jurisdiction over KSA because KSA's representatives came to Michigan on May 26, 2005, in order to negotiate a resolution to this litigation.  Finally, Plastech's counsel argued that KSA "solicited" the contract which is the subject of the dispute in this case; however, counsel acknowledged that any "solicitation" involved phone conversation(s) by KSA from

6

California.  Plastech does not assert that any representatives from KSA came to Michigan with respect to the "solicitation" of this contract.

Plastech presents no facts suggesting that KSA purposefully availed itself of the benefits and protections of Michigan's law.  In fact, this Court finds that KSA's contacts with the forum were "fortuitous" or the result of the "unilateral activity of another party or a third person."  As such, the Court concludes that it lacks jurisdiction over KSA.

KSA does not manufacture any parts in Michigan and it does not ship any parts to Michigan.  While KSA may have foreseen some impact on Plastech in Michigan as a result of its activities, "'foreseeability' [of an impact within the forum] alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295, 100 S. Ct. 559, 566 (1980).  A contractual choice of law provision in the parties contract also is insufficient to confer jurisdiction without other "deliberate affiliation" with the forum.  *Burger King*, 471 U.S. at 482, 105 S. Ct. at 2187.[2]  Contrary to Plastech's argument, KSA is not subject to the personal jurisdiction of this Court with respect to the contract involved in this lawsuit– which the parties entered into in 2002– simply because its representatives came to Michigan to attempt to resolve this lawsuit.

For the above reasons, the Court concludes that KSA did not purposefully avail itself of the privilege of acting in Michigan.  The Court therefore holds that its exercise of personal jurisdiction over KSA would "offend 'traditional notions of fair play and

---

[2]At the hearing on June 8, 2005, Plastech's counsel acknowledged that there is no language in any written document suggesting that KSA consented to jurisdiction in Michigan.

7

substantial justice.'"  *Int'l Shoe supra*.  Accordingly,

**IT IS ORDERED**, that KSA's motion to dismiss for lack of personal jurisdiction

is **GRANTED.**

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Reginald G. Dozier, Esq.
Kelvin W. Scott, Esq.
Angela L. Jackson, Esq.
Michael A. Sitzman, Esq.